UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 09-239 (JRT/FLN) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| BILLY RAY WILEY, | |
| Defendant. | |

Tricia A. Tingle, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Mannny K. Atwal, Assistant Federal Defender, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

This matter is before the Court on the objections of defendant Billy Ray Wiley to a Report and Recommendation issued by United States Magistrate Judge Franklin L. Noel on October 15, 2009. After a *de novo* review of those objections, *see* 28 U.S.C. § 636(b)(1); D. Minn. Local Rule 72.2(b), the Court overrules the objections and adopts the Report and Recommendation for the reasons set forth below.

## BACKGROUND

On February 24, 2009, a Hennepin County judge issued a search warrant authorizing a search of the downstairs portion of Billy Ray Wiley's residence in Minneapolis, Minnesota. (Application for Search Warrant, Docket No. 22, Ex. 1.)

Minneapolis Police Officer Todd Babekuhl had requested the warrant and provided a supporting affidavit. (*Id.*) The affidavit described information Officer Babekuhl obtained from a confidential reliable informant ("CRI") who purchased a quantity of marijuana from a person in Wiley's residence:

> Your Affiant has received numerous citizen complaints from area residents on the address of [Wiley's residence], downstairs, in regards to the continuous drug selling going on at the address. While doing surveillance at the address, Your Affiant observed numerous persons arriving at the residence and staying a short time and then leaving. A CRI is familiar with [Wiley's residence], downstairs, Minneapolis, as one in which the occupants are selling narcotics. **Within the past 72 hours your affiant met with a CRI** who has given the Mpls. Police Officers information in the past about narcotics activities that has been proven true and reliable. The CRI has also assisted the Mpls. Police Dept in the prosecution and convictions in past narcotics cases in State and Federal Courts.
>
> The CRI knows about [Wiley's address], downstairs, Minneapolis, as one in which the residents are dealing narcotics. The CRI was dropped off in the area of the residence, and was observed walking up to the front door of the residence. The CRI went inside the front door and knocked on the door to the downstairs unit. The door was answered by a dark skinned black that the CRI knows as "Tuckem". The seller/Tuckem asked the CRI what s/he wanted and the CRI told him he wanted a quantity of marijuana. The seller th[e]n opened his hand and had numerous baggies of marijuana in it. The seller then handed the CRI a quantity of marijuana and the CRI handed the seller a quantity of pre-recorded U.S. cash that was given to them by your Affiant. The CRI returned to your Affiant[']s location and handed me the marijuana. The marijuana later field-tested positive.

(*Id.* at 2 (emphasis added).) The supporting affidavit also stated that the CRI had reported observing the "seller/Tuckem with a handgun in the past 12 months" and that the CRI has heard him talking "about using guns for protection because he is a member of the 'Stick Up Boys' gang." (*Id.*)

The warrant authorized a search at Wiley's residence for the following property and things:

> Narcotic drugs and controlled substances, including but not limited to cocaine, also drug paraphernalia, monies and properties obtained from the illegal sales of these controlled substances, weighing and packaging materials property bartered and traded for these controlled substances, drug notes, writings and mailings to show constructive possession of these controlled substances, firearms, ammunition, and other weapons to protect the narcotic sales operation, radio and telecommunication devices, to facilitate narcotic sales, and photographic and video tape recordings of drug sales and or use.

(*Id.* at 1.)

At 4:25 pm on February 25, 2009, Officer Babekuhl executed the search warrant. (Receipt, Inventory and Return, Docket No. 22, Ex. 1.) He seized a handgun, two bags of marijuana, and $435.00 in cash from a leather jacket belonging to Wiley, as well as several other items. (*Id.*)

On August 20, 2009, the government filed a one-count indictment against Wiley, alleging that on or about February 25, 2009, Wiley was in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2). (Docket No. 1.)

On September 16, 2009, Wiley filed a motion to suppress evidence obtained pursuant to the search warrant. (Docket No. 10.) Wiley argued that the warrant's supporting affidavit lacks a sufficient showing of probable cause and that some of the information in the affidavit is stale. (*Id.* at 1.)

The Magistrate Judge recommends that the Court deny the motion, concluding that even though the affidavit did not set forth facts establishing probable cause to believe evidence of a crime would be found at Wiley's residence, the good faith exception

applied. (Report & Recommendation at 6-7, Docket No. 24.) Wiley filed objections to the Report and Recommendation, arguing that the good faith exception should not apply. (Def.'s Objection to the Report & Recommendation, Docket No. 30.) The government does not object to the Magistrate Judge's conclusion that the search warrant lacks probable cause, but contends that Officer Babekuhl objectively and reasonably relied in good faith upon the issuing judge's determination of probable cause and technical sufficiency. (Resp. to Def.'s Objections to the Magistrate's Report & Recommendation, Docket No. 36.)

## DISCUSSION

**I. THE WARRANT LACKED PROBABLE CAUSE.**

"The Fourth Amendment safeguards '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures' and mandates that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. Hessman*, 369 F.3d 1016, 1020 (8th Cir. 2004) (quoting U.S. Const. amend. IV). "To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause." *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009) (internal quotation marks omitted). "The existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (internal quotation marks

omitted).  "In ruling on a motion to suppress, probable cause is determined based on the information before the issuing judicial officer."  *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (internal quotation marks omitted).  Therefore, "[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause."  *Solomon*, 432 F.3d at 827 (internal quotation marks omitted; second alteration in original).  Although courts review the issuing judge's legal determination of probable cause *de novo*, they nonetheless "accord[] great deference to a magistrate's determination as to whether an affidavit establishes probable cause."  *Id.* (internal quotation marks omitted); *see Smith*, 581 F.3d at 694.

The affidavit fails to establish probable cause because it describes mobile and readily consumable contraband but does not include any time frame to demonstrate that such contraband would still be present at the time the warrant issued.  Wiley notes that the supporting affidavit fails to state when the controlled buy was completed, and that the CRI reported having observed Tuckem with a firearm "in the past 12 months."  (Def.'s Mot. to Suppress at 1, Docket No. 10.)  The affidavit also fails to state when Officer Babekuhl received citizen complaints and conducted surveillance of the residence.  "Probable cause must exist when a warrant is issued, not merely at some earlier time."  *United States v. LaMorie*, 100 F.3d 547, 554 (8th Cir. 1996); *see United States v. Jeanetta*, 533 F.3d 651, 654-55 (8th Cir. 2008).  Officer Babekuhl met with the CRI "within the past 72 hours," but the affidavit provides no timeframe for the activities the CRI described.  "[I]nformation of an unknown and undetermined vintage relaying the

location of mobile, easily concealed, readily consumable, and highly incriminating narcotics could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation." *United States v. Kennedy*, 427 F.3d 1136, 1142 (8th Cir. 2005); *see also Jeanetta*, 533 F.3d at 655 ("[I]n dealing with a substance like marihuana, which can be easily concealed and moved about, probable cause to believe that it was in a certain building on the third of the month is not probable cause to believe that it will be in the same building eight days later." (internal quotation marks omitted)). The affidavit also does not present credible, reliable information of "continuing criminal activity," circumstances under which the passage of time would be less significant. *Jeanetta*, 533 F.3d at 655. The Court adopts the Magistrate Judge's analysis and conclusion "that the officer's application here is insufficient to support a finding of probable cause and that therefore the search warrant was issued in violation of the Fourth Amendment." (Report & Recommendation at 6, Docket No. 24.)

## II. THE GOOD FAITH EXCEPTION APPLIES.

"[E]vidence obtained as a result of a defective search warrant is generally inadmissible," *United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007), but in *United States v. Leon*, the Supreme Court recognized a good faith exception to the Fourth Amendment exclusionary rule. 468 U.S. 897, 922 (1984). The Court held that the Fourth Amendment does not require suppression of "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Id.* "The rationale for such an exception is that no justification exists to exclude evidence when an officer acting with

objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (internal quotation marks omitted). "It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.* (internal quotation marks omitted). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* (internal quotation marks omitted; alteration in original). "The Supreme Court has noted that the so-called 'good faith' exception to the exclusionary rule is broad, advising that a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search, and thus that exclusion of evidence discovered during the search is inappropriate." *United States v. Hallam*, 407 F.3d 942, 946 (8th Cir. 2005) (internal quotation marks omitted).

The Supreme Court noted in *Leon*, however, that "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued," and in those circumstances suppression is appropriate. 468 U.S. at 922-23 (footnote omitted). In recognizing the good faith exception to the exclusionary rule, *Leon* identified four circumstances in which the good faith exception does not apply:

> [(1)] Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his

reckless disregard of the truth. [(2)] The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant. [(3)] Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. [(4)] Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient – *i.e.*, in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid.

*Id.* at 923 (some citations omitted); *see also United States v. Kattaria*, 553 F.3d 1171, 1177-78 (8th Cir. 2009) (en banc).

Wiley contends that the third and fourth circumstances apply here, thereby negating the good faith exception that *Leon* recognized.[1] (Def.'s Objection to the Report & Recommendation at 2-3, Docket No. 30.) Wiley contends that the warrant "clearly lacks probable cause," and that "[t]he affiant is an experienced police officer; he is the same officer who executed the warrant. He should have known that his warrant was facially deficient." (*Id.* at 3.) The Eighth Circuit has noted that "[i]ssues (3) and (4) turn on the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *Kattaria*, 553 F.3d at 1178 (internal quotation marks omitted).

---

[1] Wiley does not argue that Officer Babekuhl omitted the date of the CRI's encounter with "seller/Tuckem" with the intent to make, or in reckless disregard of whether the omission made, the affidavit misleading. *Cf. United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007).

### A. The Affidavit Is Not So Lacking in Indicia of Probable Cause as to Render Official Belief in Its Existence Entirely Unreasonable.

The good faith exception is not available if the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)). The Eighth Circuit has emphasized that "'[e]ntirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *United States v. Ross*, 487 F.3d 1120, 1122-23 (8th Cir. 2007) (some internal quotation marks omitted). *But see United States v. Koons*, 300 F.3d 985, 991 (8th Cir. 2002) ("It is objectively unreasonable to rely on a warrant lacking indicia of probable cause or based on an illegitimate affidavit.").

Even an affidavit that has an obvious facial flaw may not be "so lacking in indicia of probable cause" that it renders an official's belief in the existence of probable cause "entirely unreasonable." In *Leon*, for example, one of the defendants argued that "no reasonably well trained police officer could have believed that there existed probable cause to search his house," because "the affidavit included no facts indicating the basis for the informants' statements concerning [the defendant's] criminal activities and was devoid of information establishing the informants' reliability." 468 U.S. at 905, 926. The Court disagreed, stating that the "application for a warrant clearly was supported by much more than a 'bare bones' affidavit. The affidavit related the results of an extensive investigation and . . . provided evidence sufficient to create disagreement among

thoughtful and competent judges as to the existence of probable cause." *Id.* at 926. The Eighth Circuit has "found *Leon* applicable even when a facially obvious error exists on a warrant." *Hessman*, 369 F.3d at 1021. In *United States v. Hessman*, the Eighth Circuit concluded that an officer's good faith reliance on a warrant was objectively reasonable, even though the officer had failed to sign his affidavit and the magistrate had failed to administer an oath, noting that "(1) the state magistrate had made a probable cause determination, (2) the affidavit provided specific information about the objects of the search, (3) the affiant . . . helped execute the warrant, and (4) the warrant could have been made valid by the addition of [the affiant's] signature and administration of an oath." *Id.* at 1023.

The Court concludes that even though Officer Babekuhl's affidavit fails to establish probable cause, it was not "entirely unreasonable" for Officer Babekuhl to believe that it contained sufficient indicia of probable cause. Officer Babekuhl's affidavit contained specific information establishing his reasons for believing that the residents of the house were selling narcotics. It made reference to citizen complaints, Officer Babekuhl's personal observations consistent with those complaints, information from a CRI confirming that the residents are dealing narcotics, and a description of a controlled buy that the CRI conducted with a specific individual in the house. It was not entirely unreasonable for Officer Babekuhl to believe that the controlled buy or the surveillance described in the affidavit had taken place "[w]ithin the past 72 hours," even though the affidavit simply states that Officer Babekuhl "met with [the] CRI" within that period. The U.S. Court of Appeals for the D.C. Circuit reached a similar conclusion where an

"affidavit did not say when [the informant] saw the handgun" in the defendant's residence, holding that, "fairly read, [the] affidavit indicated that the informant's information was fresh [because the informant] had contacted the agent within the last '72 hours' about observing [the] handgun . . . . It is a fair reading, though not the only one, that the report **and** the observation occurred within the last three days." *United States v. Gaston*, 357 F.3d 77, 80-81 (D.C. Cir. 2004) (emphasis added).

Even though Officer Babekuhl himself was responsible for the facial error because he failed to state when the surveillance and controlled buy took place, it was not "entirely unreasonable" for him to rely on the warrant.[2] The Eighth Circuit has "rejected the argument that, because the facial error was the officer's, the officer could not reasonably rely upon it." *Hessman*, 369 F.3d at 1021. The court observed that the fact that the error was the officer's own was "not sufficient to change the fact that the issuing judicial officer bears the primary responsibility for ensuring the accuracy of the warrant as the final reviewing authority." *Id.* (internal quotation marks omitted).

---

[2] It may also have been objectively reasonable for an officer to conclude that the CRI's report of seeing "seller/Tuckem" with a handgun in the past 12 months was not stale information, because "our case law suggests that firearms may be retained for long periods of time." *See United States v. Perry*, 531 F.3d 662, 666 (8th Cir. 2008); *see also id.* at 667 ("Although this evidence may be insufficient to support a probable cause finding, we do not think the information was clearly stale such that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."). Neither the Magistrate Judge nor the parties addressed this argument, however, and therefore the Court declines to address it here.

### B. The Warrant Is Not So Facially Deficient That the Executing Officer Cannot Reasonably Presume It to Be Valid.

"A warrant is facially deficient if it lacks detail as to the place to be searched or the objects to be found." *Guzman*, 507 F.3d at 686. Wiley contends that the information contained in the affidavit is stale, an argument relevant to the foregoing analysis, but does not explain how the warrant lacks detail as to the place to be searched or the objects to be found, as relevant to this inquiry. The Court notes that the warrant provides sufficient detail as to the place to be searched, describing the premises as the "downstairs" of a specific address, as well as "vehicles belonging to any occupants, and any unattached garages and/or storage sheds." (Application for Search Warrant at 1, Docket No. 22 Ex. 1.) The Court further notes that the warrant provides sufficient detail as to the objects to be found, including various controlled substances, drug paraphernalia, and specific items relating to the illegal sale of such controlled substances. (*Id.*) The Court concludes that "the fourth exception does not apply because the warrant [i]s not so facially deficient in failing to particularize the place to be searched or the things to be seized so that no officer could reasonably rely upon it." *Hessman*, 369 F.3d at 1023.

Because the *Leon* good faith exception applies, the Court overrules Wiley's objections and adopts the Magistrate Judge's Report and Recommendation.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** defendant's objections [Docket No. 30] and **ADOPTS** the Magistrate Judge's Report and Recommendation dated October 15, 2009 [Docket

No. 24]. **IT IS HEREBY ORDERED** that Wiley's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 10] is **DENIED**.

DATED: December 15, 2009             ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                                United States District Judge